U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUN 2 4 2015
CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DAVID GRISHAM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:15-CV-324-A |
| | § | |
| CITY OF FORT WORTH, TEXAS, ET AL., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
and
ORDER

Before the court for consideration and decision is the motion of defendant Rachel A. DeHoyos ("DeHoyos") to dismiss for failure to state a claim. After having considered such motion, the response thereto of plaintiff, David Grisham, DeHoyos's reply, plaintiff's complaint, and pertinent legal authorities, the court has concluded that such motion should be granted and that all claims asserted by plaintiff against DeHoyos should be dismissed.

I.

Allegations of Complaint

In summary form, the factual allegations of plaintiff's complaint are as follows:

In October 2014, a group known as the Tarrant County Gay Pride Week Association ("TCGPWA") had an outdoor event permit from the City of Fort Worth, Texas, ("City") to conduct a

festival in General Worth Square in downtown Fort Worth to promote a positive image for the community regarding Gay, Lesbian, Bisexual, and Transgendered ("GLBT") individuals, and to educate and celebrate the diversity of the GLBT community in Tarrant County.  On October 4, 2014, plaintiff, along with family and friends, went to downtown Fort Worth to share their evangelistic message while the TCGPWA festival was taking place in General Worth Square.  When they arrived at General Worth Square, the festival was already underway.  The festival event was free of charge, and all of General Worth Square and bounding sidewalks remained accessible and open to the general public at all times.

    Plaintiff, his wife, Tracy, and his daughter, Tina, entered the part of General Worth Square where the festival was taking place, and they all handed out gospel tracts.  Tracy and Tina were confronted by Fort Worth police officers, who instructed them to leave General Worth Square under the threat of arrest. The officers informed them that TCGPWA had a permit for the festival, and controlled activity in the area.  Tracy and Tina were told that they would not be allowed to remain in any part of General Worth Square, and they were escorted by the officers out of the Square.  When Tracy and Tina tried to stop and carry on their activity on a city sidewalk between General Worth Square

and Eighth Street, the police officers required them to keep moving to the sidewalk on the other side of Eighth Street because the sidewalk they were on was also within the scope of TCGPWA's permit. After they resisted the request by the police officers that they move to the other side of the street, Tracy and Tina were warned by the police officers that if they did not go across the street they would face criminal arrest; and, the police officers physically took them by their arms and walked them across Eighth Street to the sidewalk on the other side. Those police officers then returned to General Worth Square.

A short while later DeHoyos, a sergeant with the Fort Worth Police Department, approached Tracy where she was standing on the sidewalk on the other side of Eighth Street, and warned her to stay away from the area. Upon witnessing the interaction between Tracy and DeHoyos, plaintiff walked across the street to join the conversation. When he learned of the ouster of Tracy and Tina from the sidewalk on the General Worth Square side of Eighth Street, he informed DeHoyos that he took issue with that ban. He explained to DeHoyos that he and his group were willing to stay outside the festival area in General Worth Square and would stay on the bordering sidewalk, next to Eighth Street. DeHoyos responded that "they had 'issues' in the past 'where there had almost been physical confrontation.'" Compl. at 8, ¶ 54.

DeHoyos "insisted that [plaintiff] stay off of the city sidewalk and remain on his side of the street because she couldn't guarantee his safety on the other side of the street. . . ." Id., ¶ 55. When plaintiff told DeHoyos that he could not accept that condition, she reminded him that where plaintiff was standing was a free speech zone, and warned him that she did not want him inside the festival or "over there on the sidewalk," explaining that "[t]hey have a permit to have this whole thing closed." Id. at 9, ¶ 58. DeHoyos told plaintiff that she was there "to ensure the safety of you and the safety of the people that are in here." Id., ¶ 59. When plaintiff responded to DeHoyos's concerns by saying "if we get in a violent confrontation with somebody, then you can throw us out," id., ¶ 61, to which she replied that "they already had a violent confrontation almost happen out there once," id., ¶ 62.

After plaintiff continued to insist to DeHoyos that he had the right to conduct his activities on the other side of Eighth Street, DeHoyos went to find the contact person for TCGPWA, Tony Coronado ("Coronado"), and returned with him and two uniformed police officers. When they returned, DeHoyos introduced Coronado as being in charge of the festival, explaining to plaintiff that "they own General Worth Square today by permit. . . ." Id. at 10, ¶ 67. When plaintiff responded that the permit did not cover

4

the sidewalk bounding Eighth Street, DeHoyos replied that the permit "covers curb to curb. . . ." Id., ¶ 69.

DeHoyos told plaintiff that Coronado was going to issue what was called a criminal trespass warning because Coronado did not want plaintiff or any of his people to go into the festival; and, she explained, that once Coronado had issued the warning, they would be subject to being jailed if they violated it. DeHoyos "indicated that TCGPWA had complete control over the public property. . . ." Id., ¶ 70. Coronado joined in by telling plaintiff that his group did not want plaintiff or his group in the festival, explaining that TCGPWA had a permit for the public property as DeHoyos had explained. DeHoyos reiterated to plaintiff that she had given him the trespass order and that he could be arrested for trespass for sharing his views on the sidewalk next to Eighth Street. She repeated to plaintiff that "TCGPWA maintained a permit over the city sidewalk," id. at 11, ¶ 76, and that "he would be arrested for trespass if he went over the city sidewalk to speak," id., ¶ 77. DeHoyos then concluded the conversation. For fear of arrest, plaintiff did not try to go over to General Worth Square or the sidewalk next to it during the TCGPWA festival that day.

City had "a policy, practice, custom, or procedure that allows the permittee holding an outdoor event permit to . . .

5

disallow unwanted expression on accessible public ways, including those outside the perimeter of the events," which "policy, practice, custom, or procedure is enforced by the Fort Worth Police Department." Id. at 12, ¶ 83. The conduct of the police officers reflect that City has "failed to train police officers to acknowledge and protect First Amendment rights of citizens when trying to speak on public property." Id., ¶ 84. Such policy, practice, custom, or procedure and failure to train led City to ban plaintiff's literature distribution and conversations on public sidewalks surrounding General Worth Square during the TCGPWA festival.

\* \* \* \* \*

Plaintiff alleged two causes of action, first, violation of freedom of speech, and, second, violation of due process. His freedom of speech cause of action is predicated entirely on the "policies, practices, customs, or procedures that led to the ban on his religious literature distribution and conversation on public sidewalk next to General Worth Square during the TCGPWA festival. . . ." Id. at 14, ¶ 99. He claimed in his first cause of action that such policies, practices, customs, and procedures, and the resulting ban and enforcement thereof, violated the Free Speech Clause of the First Amendment of the United States Constitution, made applicable to the states through the

Fourteenth Amendment. The violation of due process cause of action is based on the same facts, policies, practices, customs, and procedures upon which the freedom of speech cause of action is based.

II.

Grounds of DeHoyos's Motion

DeHoyos was sued both in her individual capacity and in her official capacity as a police officer of City.

DeHoyos moved for dismissal of whatever claims plaintiff might be seeking to assert against her in her individual capacity because (1) plaintiff failed to allege facts that would, if accepted as true, overcome the qualified immunity from suit enjoyed by DeHoyos as a police officer, and (2) assertion of a due process claim would not be appropriate in any event inasmuch as plaintiff's First Amendment claim is based on the same alleged facts.

As to the official capacity claim asserted by plaintiff against DeHoyos, DeHoyos pointed out that such a claim is redundant of the claims made by plaintiff against City inasmuch as an official capacity claim is deemed by law to be a claim against the governmental body for which the official is employed.

7

III.

Analysis

A. Failure-to-State-a-Claim Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. Twombly, 550 U.S. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the facts pleaded must allow

8

the court to infer that the plaintiff's right to relief is plausible. Id. To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. Twombly, 550 U.S. at 566-69. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

B. Plaintiff's Allegations Do Not Overcome DeHoyos's Qualified Immunity Defense

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, ___ U.S. ___, 132 S. Ct. 2088, 2093 (2012). A court "may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all." Id. "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Id. (internal quotation marks and brackets omitted). "In other words, existing precedent

must have placed the statutory or constitutional question beyond debate." Id. (internal quotation marks omitted).

In order to overcome the qualified immunity shield, the plaintiff must plead "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. Al-Kidd, ___ U.S. ___, 131 S. Ct. 2074, 2080 (2011). "The qualified immunity standard gives ample room for mistaken judgment by protecting all but the plainly incompetent of those who knowingly violate the law. Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir. 2008)(internal quotation marks and brackets omitted).

1. The First Prong of the Qualified Immunity Analysis

Plaintiff has failed to plead against DeHoyos facts that would support a conclusion that she violated any constitutional rights of plaintiff. Plaintiff maintains that his freedom-of-speech rights were violated by reason of "policies, practices, customs, and procedures, the ban, and the enforcement thereof. . . ." Compl. at 14, ¶¶ 99-100. There is no allegation in the complaint that DeHoyos participated in establishment of any policy, practice, custom, or procedure that led to her decision to instruct plaintiff to stay on the opposite side of Eighth Street to disseminate whatever he wished to disseminate.

10

Nor is there any suggestion in the facts alleged in the pleading that any policy, practice, custom, or procedure had as a goal the prevention of dissemination of religious literature or conversation. For all the pleading shows, if there was such a policy, practice, custom, or procedure it was content and subject-matter neutral. No fact alleged in the pleading would support a conclusion that any of the policies, practices, customs, or procedures about which plaintiff complains had as an objective denying speech within the area covered by an outdoor event permit on the basis of the content or subject matter of the speech. Put another way, there is no allegation of fact in the pleading that would support a conclusion that any policy, practice, custom, or procedure of City restricting activity within an area covered by an outdoor event permit issued by City was based upon either the content or subject matter of speech. Thus, one of the criterion is absent here. See <u>Heffron v. International Soc'y for Krishna Consciousness, Inc.</u>, 452 U.S. 640, 647-68 (1981).

Nor are any facts pleaded that would support a conclusion that plaintiff, his family, or his friends were denied an opportunity to convey their views to those in attendance at the TCGPWA event. No facts are pleaded that would suggest that plaintiff, his family, and his friends could not effectively

convey their views to participants in the festival without being on the festival side of Eighth Street, such as by stationing themselves and conveying their views to those coming and going at the entrances into the festival event. See Heffron, 452 U.S. at 655; see also Marcavage v. City of Phila., 481 Fed. App'x 742, 747 (3d Cir. 2012). As the Supreme Court explained in Heffron, "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." 452 U.S. at 647.

There are no allegations of fact that would support the conclusions that whatever restrictions City's policies, practices, customs, or procedures placed on speech on City premises occupied by a permittee pursuant to an outdoor event permit such as the one held by TCGPWA for the conduct of the festival in question did not constitute reasonable time, place, and manner restrictions or that whatever restrictions were imposed did not serve a significant governmental interest or leave open ample opportunity channels for communication of information such as the information plaintiff wished to convey. Heffron, 452 U.S. at 647-48. Nor are there any allegations of fact that would suggest that any actions taken by DeHoyos in relation to plaintiff were calculated to deprive plaintiff of a reasonable opportunity to convey whatever views he wished to

convey to participants in the festival. Summed up, plaintiff failed to allege facts that suggest that plaintiff has a plausible claim of free speech violation against DeHoyos.

As to plaintiff's due process violation claim, plaintiff is faced with the principle that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of governmental behavior, that Amendment, not the more generalized notion of substantial due process, must be the guide for analyzing these claims." Albright v. Oliver, 510 U.S. 266, 273 (1994)(internal quotation marks omitted); see also Brown v. Chicago Bd. of Educ., 973 F. Supp. 2d 870, 881 (N.D. Ill. 2013). Thus, plaintiff also has failed to allege facts that would suggest that plaintiff has a plausible due process violation claim against DeHoyos.

2. The Second Prong of the Qualified Immunity Analysis

Under this sub-subheading, the court assumes, for the sake of discussion, that plaintiff has correctly pleaded that pursuant to policy, practice, custom, or procedure City granted TCGPWA an outdoor event permit that prevented plaintiff from conveying whatever messages he wished to convey within the geographical area covered by the permit, including the Eighth Street sidewalk adjacent to General Worth Square. No facts are alleged that would support a conclusion that such a permit violated a

13

constitutional right that was clearly established at the time of DeHoyos's conduct about which plaintiff complains. Moreover, the most reasonable inference to be drawn from the allegations of the complaint is that DeHoyos's concern was with the safety of plaintiff and his group, not the content of the message plaintiff and his group were seeking to convey to festival attendees. No facts are alleged that would support a conclusion that any clearly established constitutional right possessed by plaintiff was violated by the conduct on the part of DeHoyos that was motivated by such a concern. Nor are facts alleged that would lead to the conclusion that every reasonable police officer situated as DeHoyos was at the time would have understood that what she was doing violated a constitutional right of plaintiff. Therefore, plaintiff failed to allege facts that would support a conclusion that the second prong of the qualified immunity analysis exists.

C. Plaintiff's Official Capacity Claims Against DeHoyos are Redundant

Those claims are the equivalent of claims by plaintiff against City. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); Brandon v. Holt, 469 U.S. 464, 471-73 (1985). Thus, the claims against DeHoyos in her official capacity should be dismissed without prejudice.

IV.

<u>Order</u>

For the reasons given above,

The court ORDERS that DeHoyos's motion to dismiss be, and is hereby, granted;

The court further ORDERS that all claims and causes of action asserted by plaintiff against DeHoyos in her individual capacity be, and are hereby, dismissed with prejudice; and

The court further ORDERS that all claims and causes of action asserted by plaintiff against DeHoyos in her official capacity be, and are hereby, dismissed without prejudice.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to such dismissals.

SIGNED June 24, 2015.

JOHN McBRYDE
United States District Judge